IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| D'Jaris Albert as Personal Representative of the Estate of D'Jon Ricardo Albert<br>　　　　Plaintiff,<br>　vs.<br><br>United States of America, Palmetto Health Alliance, and Carla West Roberts, M.D.<br>　　　　Defendant. | Civil Action No.3:05-3390-CMC |

**DEFENDANT UNITED STATES OF AMERICA'S**
**<u>ANSWERS TO LOCAL RULE 26.03 INTERROGATORIES</u>**

The United States of America, on behalf of the United States Department of the Army, provides its Rule 26(f) Report.

**(1)　A short statement of the facts of the case.**

Plaintiff is D'Jaris Albert, Personal Representative of the estate of decedent D'Jon Albert, her late son.

The decedent initially presented to Eau Claire Cooperative Health Centers, Inc.("Eau Claire") at ten days old on January 14, 1998. He had previously been diagnosed with sickle cell anemia. During this and other visits, the mother of D'Jon was instructed on the need for close follow-up for her son's disease. On two subsequent occasions, he was referred to Palmetto Richland Memorial Hospital (PRMH) for illnesses related to his sickle cell anemia. In August of 2003, Eau Claire referred him to Carla West Roberts, M.D. at the Children's Cancer and

1

Blood Disorders Center. Dr. Roberts noted that the decedent had received Pneumovax in July of 2000, but had never received Prevnar. Dr. Roberts noted that D'Jon "needs 1 dose Prevnar after resolution of URI [upper respiratory infection].

 Plaintiff contacted Eau Claire on November 3, 2003 and reported that the decedent had experienced fever, headaches, backaches and vomiting for two days, despite her administration of Tylenol with Codeine and Ibuprofen. Upon examination, Dr. Gardner noted that the decedent had a fever of $103°$, a headache and arm and leg pain. Dr. Gardner indicated that upon initial examination, the decedent did not appear to be toxic or gravely ill. She did not find any source of his fever. Tests for meningitis such as the Brudzinski and Kernig signs were negative. Dr. Gardner stated that she could not find an explanation for the decedent's fever. Dr. Gardner admitted the decedent to PRMH at 2:30 p.m. Dr. Gardner's plan was to perform a lumbar puncture and CT scan. She also decided that only if the fever increased above 40 Celsius would she administer Clindamycin or Vancomycin. Dr. Gardner ordered that the decedent's vital signs be taken every six hours, and administered pain medication, a complete blood count with differential, metabolic profile and head CT scan. While at PRMH, the decedent had a normal neurological examination, with no nuchal rigidity. The CT scan showed possible sinusitis, but was otherwise negative. At 7:20 p.m., a lumbar puncture was performed. Cerebrospinal fluid was sent for testing and Rocephin was administered. At 9:30 p.m., the test results on the fluid confirmed the presence of gram positive coccobaccilli, and the decedent was trasferred to the Pediatric Intensive Care Unit (PICU) at PRMH. Later that night he went into shock, his neck became very stiff and his mental status deteriorated rapidly. He was diagnosed with meningitis. Early the following morning, the decedent was intubated and received frozen plasma. The PICU

physicians noted that decedent had never been given Prevnar and was not currently on penicillin. His condition continued to deteriorate over the next 24 hours. The decedent was diagnosed with diffuse cerebral edema and symptoms suggestive of right uncal herniation. He was pronounced brain dead at 9:55 a.m. on November 5, 2003.

**(2)    The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony.**

Kristen J. Gardner, M.D.
South Pasadena, California

Other Medical Personnel Identified in Medical Records

**(3)    The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be given as to experts likely to be offered).**

The United States has not yet identified expert witnesses.

**(4)    A summary of the claims or defenses with statutory and/or case citation supporting the same.**

(1)    <u>Liability</u>

The FTCA allows for payment of a claim for property damage, personal injury or death resulting from a negligent or wrongful act or omission of employees of the government acting within the scope of employment. The FTCA provides that the United States is liable as though it were a private person in the state where the act or omission occurred. 28 U.S.C. §§ 1346(b), 2674. Under the FTCA, the substantive state law to be applied is that of the state in which the incident occurred. 28 U.S.C. §§ 2672, 2674; <u>Robb v. United States</u>, 80 F.3d 884 (4th Cir. 1996). Therefore, in this case, inasmuch as the alleged negligent act or omission in the instant case occurred in South Carolina, the law of South Carolina governing negligence (medical malpractice) will determine whether the Defendant was negligent.

In a medical malpractice action in South Carolina, the burden of proof of negligence, proximate cause, and injury rests on the plaintiff throughout the case. Ellis v. United States, 484 F. Supp. 4, 10 (D.S.C. 1978). Liability exists only when a plaintiff proves by a preponderance of the evidence the following: (1) the existence of the recognized and generally accepted standards, practices and procedures which ordinarily would be exercised by competent physicians in the same specialty under similar circumstances; (2) the physician in question negligently deviated from the generally accepted standards, practices and procedures; (3) such negligent deviation from the generally accepted standards, practices and procedures was a proximate cause of the plaintiff's injury; and (4) the plaintiff was injured. McGrady v. United States, 650 F. Supp. 379, 387 (D.S.C. 1986). South Carolina courts have held that a physician is not an insurer of health, and a physician is not required to guarantee results. A physician undertakes only to meet the standard of skill possessed generally by others practicing in the physician's field under similar circumstances. Todd v. United States, 570 F. Supp. 670, 677 (D.S.C. 1983), citing Stottlemire v. Cawood, 213 F. Supp. 897 (D.C. Cir. 1963); Easterling v. Walton, 208 Va. 214, 156 S.E.2d 787, 790 (1967). In a medical malpractice action, the plaintiff must use expert testimony to establish both the required standard of care and the defendant's failure to conform to that standard, unless the subject matter lies within the gambit of common knowledge and experience, so that no special learning is needed to evaluate the conduct of the defendant. Bothelo v. Bycura, 282 S.C. 578, 320 S.E.2d 59 (Ct. App. 1984). The plaintiff must prove causation, which exists when without such negligence the injury would not have occurred or could have been avoided. Hanselmann at 533, citing Hughes v. The Children's Clinic, 269 S.C. 389, 237 S.E. 2d 753, 757 (1977). When expert testimony is relied upon to establish a causal connection between the negligent act and the plaintiff's injury, the expert should state that the injury *most probably* resulted from the negligence of the defendant. Sherer v. James, 290

4

S.C. 404, 351 S.E.2d 148 (1986); <u>Armstrong v. Weiland</u>, 267 S.C. 12, 16, 225 S.E.2d 851 (1976).  The plaintiff's proof of medical causation must rise to the "most probably" level.  <u>See</u> <u>Madison v. Brantley</u>, 302 S.C. 282, 395 S.E.2d 190 (S.C. Ct. App. 1990).

    (2)    <u>Damages</u>

Damages under the FTCA are governed by the law of the state where the alleged negligent act or omission occurred; here the law of South Carolina.

    (3)    <u>Cross Claim</u>

South Carolina adheres to the rule that joint tortfeasors are jointly and severally liable, so that any tortfeasor against whom judgment has been entered may be liable to the claimant for the entire judgment, regardless of the tortfeasor's share of the fault.  S.C. Code Ann. § 15-38-20(A) (Cum. Supp. 2005).  A tortfeasor who has paid more than his pro rata share of a judgment is entitled to a contribution from the other tortfeasors.  <u>Id</u> at § 15-38-20(B).  The United States has files a cross claim for indemnity and contribution.

**(5)    Absent special instructions from the assigned judge, the parties shall propose dates for the following deadlines listed in Local Civil Rule 16.02.**

    **(a)    Exchange of Fed.R.Civ.P. 26(a)(2) expert disclosures; and**

ANSWER:

I.    For Plaintiff:  June 15, 2006
II.    For Defendant: September 15, 2006          .

    **(b)    Completion of discovery.**

ANSWER:     December 29, 2006

A consent amended scheduling order is being provided.

**(6)    The parties shall inform the Court whether there are any circumstances which would affect the time frames applied in preparing the scheduling order.  *See generally* Local Civil Rule 16.02 (Content of Scheduling Order).**

ANSWER:     None.

**(7)     The parties shall provide any additional information requested in the Pre-Scheduling Order (Local Civil Rule 16.01) or otherwise requested by the assigned judge.**

ANSWER:     Nothing requested.

REGINALD I. LLOYD  
ACTING UNITED STATES ATTORNEY

/s/ R. Emery Clark  
By_____  
R. Emery Clark (#1183)  
Assistant United States Attorney  
1441 Main Street, Suite 500  
Columbia, SC 29201  
(803) 929-3000

March 3, 2006

6

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| D'Jaris Albert as Personal Representative of the Estate of D'Jon Ricardo Albert<br>　　　　Plaintiff,<br>　vs.<br><br>United States of America, Palmetto Health Alliance, and Carla West Roberts, M.D.<br>　　　　Defendant. | )<br>)<br>)　Civil Action No.3:05-3390-CMC<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CERTIFICATE OF SERVICE BY MAIL

　　The undersigned Assistant United States Attorney hereby certifies that he/she has caused service of the attached **DEFENDANT UNITED STATES OF AMERICA'S ANSWERS TO LOCAL RULE 26.03 INTERROGATORIES** by a legal assistant employed in the Office of the United States Attorney for the District of South Carolina and is a person of such age and discretion as to be competent to serve papers.

　　That on March 3, 2006, my legal assistant served copies of the foregoing documents by CM/ECF Electronic Mail and/or by placing said copies in a postpaid envelope addressed to the person(s) hereinafter named, at the place(s) and address(es), and by depositing said envelope and contents in the United States Mail at U.S. Attorney's Office, 1441 Main Street, Suite 500, Columbia, SC 29201, to the following:

　　　　　　　　　　　　　　　　　　　　　　　/s/ R. Emery Clark
　　　　　　　　　　　　　　　　　　　　By_____
　　　　　　　　　　　　　　　　　　　　R. Emery Clark (#1183)
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney